## DETROIT FIDELITY & SURETY CO. v. UNITED STATES.

### No. 9306.

Circuit Court of Appeals, Eighth Circuit.

May 5, 1932.

Samuel P. Halpern, of Minneapolis, Minn. (R. S. Rutchick, of St. Paul, Minn., on the brief), for appellant.

Lewis L. Drill, U. S. Atty., and O. A. Blanchard, Asst. U. S. Atty., both of St. Paul, Minn.

Before STONE and BOOTH, Circuit Judges, and WYMAN, District Judge.

WYMAN, District Judge.

This appeal involves the review of a judgment of the District Court of the United States for the District of Minnesota, in a certain scire facias proceeding instituted by the United States of America against one Naomi Fargo and Detroit Fidelity & Surety Company, to enforce a judgment of forfeiture made and entered on the 26th day of September, 1930, against the said parties as principal and surety, respectively, in a certain bail bond or recognizance, which was filed in the office of the clerk of said court on the 12th day of May, 1930, in a criminal proceeding then pending in said court against said Naomi Fargo.

The material facts as disclosed by the record were as follows: Naomi Fargo was arrested for alleged violations of the National Prohibition Act (27 USCA), and thereafter, on May 10, 1930, was released from custody upon the execution and delivery of the bail bond above referred to which was conditioned for the appearance of said Naomi Fargo before said United States District Court on the 9th day of June, 1930, and from day to day and from term to term thereafter to which said case might be continued. On September 23, 1930, which was the first day of the September, 1930, term of said court, defendant Fargo appeared and entered plea of not guilty, and on September 26, 1930, she failed to appear, and left the state of Minnesota, arriving at Hutchinson, Kan., on the 27th day of September, 1930, where she remained until her death, which occurred on November 19, 1930. On September 26, 1930, the bail was declared forfeited by the court, and an order was obtained for the issuance of the writ of scire facias. The indictment found and returned against said Naomi Fargo

was, on motion of the United States District attorney, nolled and dismissed on March 3, 1931. Upon the return of the writ of scire facias, the appellant, Detroit Fidelity & Surety Company, filed its separate traverse and answer therein, admitting the execution and delivery of the recognizance, and alleging upon information and belief that the said Naomi Fargo appeared personally before said court on the 9th day of June, 1930, pursuant to the requirements of said bail bond, at which time said criminal proceeding was continued until the September, 1930, term of said court; that the said Naomi Fargo appeared personally before the said court at the opening day of said September, 1930, term thereof, and each day thereafter until on or about the 26th day of September, 1930, when "by reason of the abnormal mentality and mental derangement rendering said Naomi Fargo irresponsible for her actions, she failed to make further appearance before said court."

Said answer further alleges: "Further answering, this answering defendant alleges that the case in which the said Naomi Fargo was charged by an indictment with having violated the National Prohibition Act in several respects was continued from the September, 1930, term of this court to the March, A. D. 1931 term of this court, and that at the opening of said March, 1931, term of this court, upon motion of the plaintiff in said action, the United States of America, the indictment indicting the said defendant, Naomi Fargo, and charging her with the commission of certain offenses in violation of the National Prohibition Act, was nolled and said cause dismissed"—and concludes with the general denial of the recitals contained in the writ except such as are specifically admitted, qualified, or avoided by said answer.

The issues thus presented were tried to a jury, and at the conclusion of the trial both sides moved the court for a directed verdict, and the court directed a verdict in favor of the government.

 Since both sides moved for a directed verdict, the determination of the facts in the case by the court has the same force and effect as a verdict of a jury, and the decision, if supported by any substantial evidence, cannot be disturbed on appeal. Southern Surety Co. v. Fidelity & Casualty Co., 50 F.(2d) 16 (C. C. A. 8); U. S. v. De Armond, 48 F.(2d) 465 (C. C. A. 8); Queensboro Natl. Bank v. Kelly, 48 F.(2d) 574 (C. C. A. 2); N. Y. Life Ins. Co. v. Ollich, 42 F.(2d) 399 (C. C. A. 6); C. F. Childs & Co. v. Harris

Trust & Savings Bank, etc., 27 F.(2d) 633 (C. C. A. 7).

 Upon the trial the court refused to permit several lay witnesses, sworn on behalf of appellant, to express an opinion as to the sanity of Naomi Fargo, after each of said witnesses had testified as to their acquaintance with the said Naomi Fargo, and their observation of her conduct, conversation, and appearance. The several rulings of the trial court in this regard were duly excepted to and are now assigned as error by appellant, and if, as contended by appellant, the mere fact that Naomi Fargo was insane and mentally irresponsible at the time of the default constituted a defense to the scire facias proceeding, then the question as to the correctness of these rulings of the trial court becomes material, but if, as contended by the government, the mere fact of the insanity or mental irresponsibility of Naomi Fargo is not a defense, the rulings complained of could not result in prejudice to the appellant because of the lack of materiality of the excluded evidence. This brings us to the consideration of the question as to whether or not the insanity of the principal is a defense available to the surety upon forfeiture of a bail bond by reason of default. There seems to be more or less conflict in the authorities as to this question. That insanity is a valid defense seems to have been held in Smith v. People of State of Colorado, 67 Colo. 452, 184 P. 372, 7 A. L. R. 392. See, also, 3 R. C. L., Page 55, § 67; 6 C. J. 946–1053, and the following cases: Commonwealth v. Craig, 6 Rand. (Va.) 732; Baker v. State, 23 Tex. App. 657, 5 S. W. 130; Scully v. Kirkpatrick, 79 Pa. 324, 21 Am. Rep. 62; People v. Tubbs, 37 N. Y. 586; People v. Manning, 8 Cow. (N. Y.) 297, 18 Am. Dec. 451; Chase v. People, 2 Colo. 481.

On the other hand, it has been held that insanity and illness are not defenses. Bowerbank v. Payne, Fed. Cas. No. 1727; Severson v. Macomber, 212 N. Y. 274, 106 N. E. 72; Ringeman v. State, 136 Ala. 131, 34 So. 351. Some of these cases were cases of illness instead of insanity. There would seem, however, no valid reason for distinguishing insanity from any other disease or disability in this connection, and, in our opinion, the rule established by the best-considered cases seems to be that any illness or disability, the result of disease or conditions beyond the prevention or control of human agency, is regarded as an "Act of God," but, in order to constitute a sufficient defense to relieve one of the consequences of a default or breach of

an obligation, the conditions must be such as to render it, within the realms of reason at least, impossible to perform the duty or discharge the obligation. Performance of a contract will only be excused as being prevented by an act of God where there are intervening circumstances which render performance impossible and not when they only make it difficult or undesirable. Dewey v. Alpena School District, 43 Mich. 480, 5 N. W. 646, 38 Am. Rep. 206; Gleeson v. Va. Midland R. R. Co., 140 U. S. 435, 11 S. Ct. 859, 35 L. Ed. 458.

Assuming, without deciding, that Naomi Fargo was, in the broad significance of the term, insane at the time of her default; that she was in some respects irrational or mentally irresponsible, such an affliction, being the result of disease beyond the prevention or control of human agencies, would undoubtedly be an act of God. It does not necessarily follow, however, that such a condition should or would relieve either her or her surety from the obligations of the recognizance. There is nothing in such a state of facts that tends to show her inability to be in attendance at court, or that the surety was in any way prevented from producing her. There is nothing in the record in this case that shows or tends to show any fact or condition which could be regarded as in any way preventing the appearance of Naomi Fargo in court pursuant to the requirements of the bond. Neither was there any offer of such proof upon the trial of the case. Manifestly, then, the individual opinion of each of the several lay witnesses as to the sanity or insanity of Naomi Fargo was wholly immaterial, and the action of the trial court in excluding this testimony, even if erroneous, was not prejudicial.

█ It is next urged by appellant that no proof was offered or received showing that an indictment was in fact pending at the time of the forfeiture. Frank L. Morrison, a witness called and sworn on the part of appellant, testified, in part, as follows: "My recollection is that my first meeting with her (Naomi Fargo) was at the time of the signing of the bond which was done in our office. Pursuant to the conditions of the bond Naomi Fargo appeared before this court on the 9th day of June, 1930. I appeared with her. I was informed that I could appear with her at a later date, the Grand Jury had not as yet acted in the matter. Thereafter we were informed in some manner that an indictment had been found, and I assume that we were notified by the United States District Attorney's office to appear and accordingly we did

appear and she was arraigned. Such appearance and arraignment took place on the opening of the September, 1930, term of this court, and the attendance of Naomi Fargo was in accordance with the conditions of the bond. She appeared with me on more than one occasion prior to the plea of not guilty being entered. Then she was indicted. Then appearance was made in response to the indictment and the plea of not guilty entered. After she was arraigned and pleaded not guilty she was in attendance upon the court from day to day and then I had made arrangements with Mr. Rensch that I would eventually come in on a certain day at four o'clock and that she was going to withdraw her plea of not guilty and enter her plea of guilty, which was not done, however. As the September term of court approached and after the first appearance in court, after her plea of not guilty had been entered, she used the expression, 'I am running.' "

Mr. Chell M. Smith, deputy clerk of the United States District Court for the District of Minnesota, was called and sworn on behalf of the plaintiff, and testified in part as follows: "According to the docket entries of the criminal case of United States v. Naomi Fargo, the record discloses that Naomi Fargo was and appeared in court on the 23rd day of September, 1930. I do not exactly remember what happened on that day except that the 23rd of September was the first day of court and cases were set for trial after that. On the 23rd day of September she appeared and entered a plea of not guilty and on September 26, 1930, the bond of Naomi Fargo was forfeited by the court. She failed to appear on that day and a bench warrant issued."

On cross-examination the same witness testified, in part, as follows: "On the 23rd day of September, 1930, Naomi Fargo appeared in person and by her attorney, Mr. Morrison. I cannot tell from an examination of the docket whether or not she appeared on the 24th or 25th of September. There is no record kept by the clerk or by any of the officers of the appearance of defendants in criminal cases after the opening of the term of court. The record discloses that an indictment was filed on the 18th day of September, 1930, and that it was nolled and the case dismissed on March 3, 1931, on motion of Mr. Blanchard, Assistant United States District Attorney. It appears that the indictment was nolled and the case dismissed because of the death of Naomi Fargo, as per death certificate filed on March 3, 1931."

Paragraph VI of appellant's answer al-

leges: "Further answering, this answering defendant alleges that the case in which the said Naomi Fargo was charged by an indictment with having violated the National Prohibition Act in several respects was continued from the September, 1930, term of this court to the March, A. D. 1931, term of this court, and that at the opening of said March, 1931, term of this court, upon motion of the plaintiff in said action, The United States of America, the indictment indicting said defendant, Naomi Fargo, and charging her with the commission of certain offenses in violation of the National Prohibition Act was nolled and said case dismissed."

It is apparent from the allegations of the answer that the defense interposed to the writ is not in the nature of a plea nul tiel record, but, on the contrary, is in the nature of a special plea which in effect admits the default and alleges facts which it is contended have the legal effect of excusing it. In view of the allegations and admissions contained in the answer and the testimony disclosed by the record, there is no merit to appellant's contention in this regard.

 The remaining question is that presented by appellant's contention that the surety was discharged by reason of the fact that the indictment was nolled prior to the trial of the instant case. It appears by the record that the default and adjudication of forfeiture occurred September 26, 1930, and that the writ of scire facias issued on the same date, that thereafter, on November 19, 1930, Naomi Fargo, principal in the recognizance, died, and that on March 3, 1931, the indictment was by reason of that fact nolled on motion of the district attorney. The question as to whether or not any liability accrued against the appellant must be determined by the conditions obtaining at the time of the default, and the adjudication of forfeiture was a final judgment, at least to the extent of a declaration that there had been a default or breach of the conditions of the recognizance. The scire facias proceeding is but a continuation of the forfeiture proceeding in so far as the adjudication of forfeiture is concerned, and, if the appellant was legally liable under the facts or conditions as they existed at the time of the forfeiture, the fact that subsequently the principal died and the criminal proceeding was therefore dismissed, would not constitute a defense in a proceeding of this nature.

Finding no prejudicial error in the record, the judgment of the District Court should be and is affirmed.